We'll hear the next case on the calendar, Pehush. Good morning, Scott Kornbaum for Ms. Pehush. At the moment that Detective Ashworth placed Ms. Pehush in handcuffs, she knew the following, she being Detective Ashworth. She knew from Denea Crosby, the TA, the substitute TA, that Crosby had little interaction with E.H. other than what she had observed. She knew, and this is all information from Crosby, the only person with first-hand information, Ashworth knew that Ms. Pehush had not hit E.H., screamed at her, cursed at her, raised her voice at all, expressed anger, or ever left her unattended in the classroom. In fact, she knew from Ms. Crosby that Pehush had worked with her, meaning E.H., throughout the day. That is admitted by the town and Ashworth. She also knew, and that Crosby never saw E.H. cry, looked physically upset, or she even never thought she was in danger. All she told Ashworth and the other members of the police department was that she, quote, that she thought it was inappropriate what Sharon had been doing. No, look, let me be quite clear on this. The New York law on endangering the welfare of a child is unconscionably vague. It is disgustingly vague. The result of it is that a teacher might not be given the protection that we believe police should have for behavior. Here is a case of qualified immunity because we don't want the police to be made liable when they're doing something that is possibly okay, and yet this teacher is in that situation. But the question here is whether the policeman, whether the arrestor, was doing that. However bad I think it is, isn't it the case that this arrestor, under this very vague law, was acting, not having probable cause, but acting in a way that was not that wildly unreasonable, that a policeman couldn't think that? Well, I can agree that the endangering statute is, as you've described it, Judge Calabresi, but the clearly established law from this circuit, since 1994, where this court decided Oliveira, and 2002 when it decided Loria, was that no reasonable officer could believe that probable cause existed to arrest without failing to investigate further, particularly where the existence of probable cause was close, and I don't even think it was close. Time was not of the essence. It clearly was not of the essence. And where the results of said investigation would confirm the absence of probable cause. That's the clearly established law. Chief Hertman, when questioned, said, of course, of course, Detective Ashworth should have been spoken with PINA, the TA who was in the room on March 28th, who was in the classroom on April 2nd, when Detective Ashworth appeared. So that's the relevant, clearly established law. And when one thinks of qualified immunity, it applies most aptly when the officer has to make a quick decision, when they're out on the street and they're being, when they're being confronted with confusing information. Make no mistake, this was grotesque what happened to Sharon Payhush. She did nothing wrong. And when you take, when you take, again, Ashworth That's often the case in qualified immunity cases. But it's not a reason why qualified immunity is such a problem. Oh, absolutely agreed. And that's why this court's case law is clear, though. When you can take time, because Payhush is not coming back to class while Ashworth is conducting her investigation, and Ashworth knew that. That's undisputed also. So when you, when you, obviously Detective Ashworth had to conduct an investigation. She did not. I mean, she just basically took what Crosby said and said, okay, that's enough. Does it matter in terms of the behavior of an officer that he asked the assistant district attorney and that the ADA said it was okay? Two things. That's a disputed fact, Your Honor, what was discussed. Um, first under Reeves, the Supreme Court's decision in Reeves, the jury doesn't have to accept Ashworth, what Ashworth claims. I think equally important. First, the detective didn't say probable cause. It said it appeared to fit the criteria. That's different than saying it fit the criteria. It appeared to fit. Jury doesn't have to accept that fact. We didn't, they never identified the ADA. We never had a chance to pose an ADA. Ashworth's notes, her handwritten notes, not her supplemental report after the fact. Her handwritten notes don't reflect a conversation with an ADA. So we don't know. What was, what was the nature of the dispute then? You said that that was a disputed fact. Right. Whether the ADA told her, told Ashworth that it appeared to fit the criteria. What did you put in to dispute that fact? Well, exactly what I said. Uh, there was, there's no notes of a conversation, contemporaneous notes. There's, uh, I'll find what page. Um, there's handwritten notes. Um, there's, they never identified the ADA in discovery and response. What they did was some identified ADA, unidentified ADA. So we couldn't depose that person for obvious reasons. So it's one thing to say that she spoke with an ADA. What we also, what, what we also put into refute is that, um, Ashworth claimed her handwritten notes are 8-12 of the joint appendix. We also, uh, put in that what Ashworth testified she told the ADA was what Crosby told her. Right? So there's no mention of PINA. There, we, we don't know what else. We don't know if she told her about how she wasn't crying and how she worked with her throughout the day. You know, if she just told her what was in that statement she took from Crosby, because that was the sum and substance of her investigation. What did Crosby tell her? And then she spoke with Bryn Hutchinson, the, the, the therapist, the speech therapist. Is there, is there any, is there any, uh, for example, genuine dispute with respect to, uh, whether the detective Ashworth, what, what, what she knew regarding how your client, uh, treated EH, uh, while she was separated from the class? Well I think that works in our favor. I'm not sure quite sure what it does. Well that's what I want to know. No, no, again, we think we were entitled to the determination that probable cause was lacking. Or about what she knew regarding the physical setup of the, uh, of the cardboard dividers and the bookshelf. She has no idea what the cardboard said is because it's also admitted, undisputed, that after she speaks with Crosby, they don't go back to the, she doesn't say, show me what happened. They don't go back to the classroom at any time. I have, I have a whole other set of things. If I'm just one, did, did I answer your question, Chief Judge Calabresi? Yeah. Thank you. Yes, Judge Calabresi. And that has to do with a municipality's liability. Uh, I know we have said in CAS, an opinion in which Judge Lohier was on the panel, uh, that where there is qualified immunity, there is under state law, no liability for the municipality. But it seems to me that that is anything but clear. Uh, there are several cases where Pony and, uh, and, and some dicta in McCummings, which suggests the opposite. The restatement of agency is quite clear that, uh, uh, where it is qualified immunity, uh, there is respondeat superior. I don't buy your argument that because we do this in a 1983 situation, because that's all level of liability is different. That's a different thing. But we don't really know several states do give it. We don't really know that. Are we bound by, uh, this, uh, statement in, um, in CAS or can we certify that question? Or short of certifying, can we simply order that this be dismissed without prejudice so that this question of state law, which seems to me quite unclear, despite our very clear statement about it, can be worked out by the state? Uh, yes, to all of those, Judge. The only, the only statement you made just now that I take issue is, is that it's clear. It is a one-off sentence in an issue that was not even raised. I went back and read the CAS briefs. Well, that we'll find out from that. No, but I just, it's not, it's not in our briefs. I'm not sure that I can remember that, but go ahead. But I went back and read the CAS briefing. Yeah. And it was an interlocutory appeal brought by the city. Well, I, I made a, uh, perhaps unfortunate statement, uh, in a case called Coasson and then in, in a concurring opinion in Tapia that where we have held something and there has not been anything since then, uh, in the state to undercut it, we are bound by that. But I'm not sure that that makes sense, uh, in a situation where there isn't time for the state to say, we don't really agree with it. So that I think that my statement, uh, may have of that may have been, uh, as dubious as the statement in CAS. I'm not familiar with the cases you're referring to judge, but I like the conclusion. That's for certain. It's we, the, the easiest thing to do would be either to certify, which we would prefer or to dismiss for lack of, uh, for lack of subject matter jurisdiction. Oh, no, not dismissed. We, that's, we do have subject matter jurisdiction. No, no, I'm sorry. The court should not have exercised supplemental jurisdiction over the state law. I should not have reached that issue. That's what I meant to say. The easiest thing to do is to find no qualified immunity. Then it all goes back and really, if one thinks about this after everything is said and done, all you have also another, what's not able to, what's not, may I continue or do you want, what's also not disputed is that Ashworth knew they may dispute this, but I think the record's clear that the, the allegation that Payhush left E.H. sitting in a dirty diaper all day and the specific was let her eat lunch, still sitting in a dirty diaper. That's not the case. They have admitted she used the bathroom. E.H., right? They know that when Crosby tells the officers that Payhush didn't, you know, that she's still sitting in a dirty diaper, an hour before she heard it was dry. An officer can't just accept when time is not of the essence, cannot just accept to say so when doing a tad bit of legwork would make it crystal clear that probable cause was lacking. United States v. Fisher makes clear probable cause cannot rest on even strong reason to suspect, and that ties into the endangering statute. The harm can't be speculative. It's got to be likely. Are you saying that in Loria we held, we embraced what the Eighth Circuit has embraced in Kuhl? That is that even when probable cause is established, if time is not of the essence, there is a duty, so the officer is under a duty to continue to investigate. Are you saying that? Yes, because they, that case, Loria, I'm sorry, cited Bevier from the Seventh Circuit, which created that, which was the most commonly cited. Your contention is that is the, that is our law, that is Second Circuit law. Sure, absolutely. I'm not unmindful of the once probable cause exists, you don't have to investigate further, and the fundamental flaw in Magistrate Judge Smith's reasoning is that she thought all this information, all this other evidence about the screaming, and I treated her kindly and so forth, came from Pejas during the interrogation. It didn't. It came from Crosby. So it's not, of course, an investigating detective doesn't have to believe the say-so of the suspect. But that's not the case here. I'm well over, thank you very much, and I think I still have two minutes for rebuttal. You do. May it please the Court. This is a qualified immunity case, and qualified immunity was found by the district court on the arguable probable cause aspect. I submit that there's no clearly established law as a second form of administering qualified immunity under these facts that she could not have been arrested under the endangering the welfare of a child statute. But aren't there a lot, aren't there several genuine disputes that exist that hamper our ability to know whether there's qualified immunity or not? I mean, you've got in this case, Mahush treated E.H. when she was separated and how she was separated. I mean, there are the conflicts all over the place. You've got the sworn statements from Lentino and Feil, the first persons whom Detective Ashworth spoke with, and they suggest that they were under the impression that Mahush put E.H. in a corner, stuck her in a corner, forgot about her, punished her in essence by refusing to let her engage in various activities. And then you've got Crosby's sworn statement that she wrote that Corrado asked Mahush to work with a little girl and Mahush said no. But on the other side of it, you've got Crosby's sworn statement that E.H. was kept in the room with only Mahush when the other students went to the gym, that she was working, Crosby suggests that she was working one-on-one, that Mahush was working one-on-one with E.H. during the time. Crosby, as your adversary points out, indicates that Detective Ashworth didn't say that E.H. was crying or looked upset, according to anyone who had spoken to her. And there's nothing in the record about how those bookcases were set up, whether E.H. was in this in-prison-like situation or whether she was simply walled off. Instead, we have a series of misstatements by the detective, right? I mean, the detective says that, you know, the little girl was just throwing Legos, right? And that's not what we understand Mahush to have said. We have Mahush who talks about this one-on-one discussions, and we have Mahush who talks about when lunch was given. The detective gives a time that seems to be at variance from what everybody says about when lunch was given, gives a totally different picture. I mean, at what point can we say that there is qualified immunity when there are these genuine, apparently, disputes of fact? Chief Judge, we don't dispute many of the facts that you've raised. I think you were referring to Detective Ashworth's story as presented to Ms. Payhush during the interview, and I submit that probable cause to arrest was established, or at least arguably established, through the statement of Ms. Crosby. It wasn't established only after the interview with Ms. Payhush. It existed before that interview. But don't we have any number of cases that talk about teachers in the classroom, and what is okay for teachers to do? That is, in situations where there are suits against teachers, we've said that teachers have a certain amount of room and discretion, and those cases are there, and the officer should know about them, so that this is very different from the context of other behavior by the police. That is, there is a situation in which what the officer is doing is coming counter to the degree of authority that we let people, and must protect, of teachers in the classroom, so that in that situation where we have attention, doesn't that require more time? That is, if it's something urgent, of course, but time is important in a context where you are also protecting the, I don't want to call it qualified immunity, but almost that of a part of a teacher. Your Honor, I think, as you mentioned earlier, the statute that she was charged with is vague, and I think any reasonable police officer, or reasonable police officers, could disagree whether or not the conduct of Ms. Pahusch constituted endangering the welfare of a child, given the totality of the circumstances, and we can't examine one aspect in isolation. Might well bring something about if it was urgent, but given the context, the vagueness of the statute, which might allow it, but might not, and the context of a teacher, and that time doesn't matter, is it sufficiently clear that where time doesn't matter in a context like this, a reasonable officer would know enough to do something else? I don't think it's clearly established that she must have waited, or further developed her investigation before arresting, because I believe she had probable . . . Your Honor, this cites to Loria, which I think your brief does not cite to, when you say that it's not clearly established, so you're saying, I think, that there is no Second Circuit decision that, like the Eighth Circuit, for example, imposes a form of a duty, I mean, a duty is maybe too strong a word, on an arresting officer to conduct more of an investigation if time is not of the essence. I agree, Your Honor, there's no duty that the investigator continue the investigation, and I think Loria is quite distinguishable from the probable cause at all, because the officer never asked the putative victim of the alleged crime if she believed that this other driver of a car intentionally collided with hers, or if the owner of the vehicle was even present in the car at the time. This is separate, where the appellant is asking Detective Ashworth to have gone and interviewed not just the director, not just the teacher in charge, not just Ms. Pahusch, not Ms. Crosby, but another TA who was in the room. I think that stretches Loria quite too far. Could you address my question about the municipal liability? Do you object to us certifying, or do you object to us saying that the court should, in these circumstances, have dismissed without prejudice the claim against the municipality? I do object. I believe it's sufficiently clear in New York State that once there is no underlying violation— Where do you say that, where you have Verponi saying the opposite and the appellate division in McCutcheons suggesting the opposite? Yeah, there are some lower court cases, but do you have a court of appeals case that says that? I mean, what you have is a restatement of liability. Some state court cases that go one way, and some state court cases that go the other way. How can you say it's clear? I think there's a distinction between when municipal liability attaches under Monell and here. Here in New York State— Monell is totally different. Monell is totally different because Monell requires bad behavior on the part of the municipality itself. That's why I don't buy the argument that opposing counsel makes about Ashkins, because Monell is a different thing. I'm asking whether New York says that when somebody has been, when the agent is not liable because of qualified immunity, not because of probable cause—that's very different thing—but just because it's sufficiently uncertain that that protects the municipality. And I don't find any case in New York that makes that clear. The New York Court of Appeals in Artiega v. State held that an action receives qualified immunity shielding the government. They didn't say it shields the actor. It shields the action, which is far different. And therefore, once the action is shielded, the actor is obviously shielded. But the intention behind that line of cases from the Court of Appeals down is to protect the municipal entities in the state of New York. Why should the municipality be protected when the reason we don't go against the agent is simply that the agent couldn't know enough? If there were probable cause, that's the action. But that's a very different situation. In any case, is it clear enough that we ought simply to say that New York, not give New York a chance? I don't think there's any reason to certify. I think it's quite clear that the difference between the actor and the action, there's strong public policy in New York to protect municipalities. And the employee or agent is a subset of that municipality. But the clear intent of case law in New York is to protect the municipal entity. And that's the reason. When the actor didn't have probable cause, but that's not what we're talking about. And as I say, the restatement of agency is quite clear. When you're saying we are not holding this person because he might have made a mistake, but it was an honest mistake, why should that protect the municipality? Again, I believe it's... I mean, if there were a clear case, I could see. No. Thank you. Thank you. Thank you, Your Honor. A couple of brief points. Let's be clear. This court in Jenkins said that arguable probable cause does not mean almost probable cause. And a jury can readily find the undisputed facts, or at least disputed material facts, that Sharon Payhush did nothing more than work one-on-one with E.H. throughout the day, giving her virtually undivided attention. But also is a significant point, which I should have raised before is, who's responsible for taking care of the toileting needs? The TAs, not Sharon Payhush. As far as the point, Your Honor, with Lauria, also in the Second Circuit, this court in Oliveira in 1994, following Bevier, the Seventh Circuit case, also talks about the need for further investigation when time is not of the essence. You can't ignore facts that are before you that would cast doubt on probable cause. That seems like a fairly unremarkable proposition. Your Honor, there are no New York Court of Appeals cases standing for the proposition of if there's immunity, individual immunity, then the municipality is off the hook. Artiega, as we talk about in our reply brief, deals with the state's waiver of its sovereign immunity when officers, correctional officers, have quasi-judicial immunity. The Mullins case that they cite has to do with governmental immunity for, in that context, negligent hiring. The whole idea of qualified immunity under state law, you don't even find it until this court created it and said so. You didn't even find it. It's really a remarkable proposition. If there are no further questions, thank you very much. Thank you both for your arguments in this challenging case.